# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| NELSON J. HOGQUIST, | }<br>} |
| Plaintiff, | }<br>} |
| vs. | } Civil Action No.: 3:21-cv-5013-MDH |
| PACCAR, INC., et al., | }<br>}<br>} |
| Defendants. | } |

## ORDER

Before the Court is Plaintiff's Motion to Reconsider (Doc. 89) the Court's previous order (Doc. 86) dismissing WABCO USA, LLC from this case and seeking leave to file Plaintiff's Second Amended Complaint. For the reasons set forth herein, the Motion is **GRANTED**. The Court hereby overrules its previous order. (Doc. 86).

## BACKGROUND

On January 25, 2021, Plaintiff Nelson Hogquist ("Hogquist") filed the present products liability claim alleging he was injured when the Collision Mitigation System ("CMS") on the Kenworth T680 truck (the "Truck") he was driving malfunctioned. Specifically, Hogquist alleges that the CMS activated when there was no other vehicle nearby and there was no safety-based reason or cause for the deceleration. The activation caused an unexpected, sudden, and violent deceleration from highway speed resulting in injury. (Doc. 1, Complaint, ¶ 9-12).

The Complaint alleges that the Kenworth Truck was manufactured, distributed and sold by Defendant Paccar, Inc. and the CMS system installed therein was manufactured, distributed and sold by Bendix Commercial Vehicle Systems, LLC or WABCO Automotive Control Systems, Inc. (Doc. 1, Complaint, ¶ 9). The Truck in question was sold and/or leased by Paccar to CFI, Inc., a

trucking company in Joplin, Missouri. Plaintiff was employed by CFI, Inc. in Joplin, Missouri. CFI, Inc. assigned the Truck to Plaintiff in Joplin, Missouri for use as an over-the-road truck driver. (Doc. 1, Complaint, ¶ 1, 9).

WABCO was served with the summons and Complaint on January 25, 2021. WABCO did not timely respond. On March 23, 2021, Plaintiff filed a motion for default judgment as to WABCO (Doc. 27), which result in a Clerk's Entry of Default on March 25, 2021 (Doc. 29).

On April 6, 2021, counsel entered an appearance for "WABCO USA LLC," which it stated was improperly named as WABCO Automotive Control Systems, Inc. and filed a Motion to set aside the default (Doc. 35). Plaintiff consented to setting aside the default, and, on, April 29, 2021, Plaintiff filed his Amended Complaint (Doc. 45), naming both WABCO Automotive Control Systems, Inc. and WABCO USA, LLC as Defendants (collectively referred to herein as "WABCO").

On May 6, 2021, WABCO counsel filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 48) and Memorandum in Support (Doc. 49). Counsel for Plaintiff and WABCO worked cooperatively and discussed whether and when a response from to the motion to dismiss would be filed. In particular, counsel discussed the fact that discovery from CFI (including an inspection of the Truck) may be needed to determine whether WABCO manufactured the CMS unit. If that discovery revealed WABCO did not manufacturer the unit, WABCO would be dismissed. Counsel for Plaintiff and WABCO discussed scheduling an inspection of the Truck to obtain this information, and Plaintiff's counsel was in discussions with CFI to obtain information regarding the CMS unit and to schedule an inspection. Plaintiff's counsel apparently had a meeting scheduled with CFI on May 26th for this purpose. That meeting was cancelled and after several attempts has been rescheduled for August 18 with CFI counsel.

Counsel for Plaintiff and WABCO also discussed personal jurisdiction discovery and WABCO was agreeable by extending the response date for the motion to dismiss to allow for personal jurisdiction discovery to be completed. By agreement, Plaintiff's response date was extended to June 19, 2021. As part of this agreement, Plaintiff's counsel agreed that WABCO would not be required to respond to the discovery served by Plaintiff directed to the merits of the case until the personal jurisdiction issue was decided. As the June 19, deadline approached, counsel for Plaintiff asked for and received additional time to and including July 19, 2021, in which to file a Memorandum in Opposition, and the parties agreed to the filing of a consent motion for the extension. The motion was filed June 17, 2021 (Doc. 75) and granted the same day (Doc. 76).

Through inadvertence, Plaintiff's counsel did not docket the new response date and the July 19 date passed with no response, or request for additional time, from Plaintiff. The Court ruled on WABCO's personal jurisdiction motion on July 27, 2021 (Doc. 86) without a response from Plaintiff. "Plaintiff's counsel apologizes to the Court and WABCO for the mistake. The mistake resulted from a miscommunication in the undersigned's office and was not intended to delay or prejudice any party." (Doc. 90, p. 3).

According to Plaintiff, Plaintiff counsel's intent was to file a new companion case, *Haskell v. Paccar, Inc., et al*, which involves the same party-defendants and many common issues of law and fact, and request consolidation of the cases for purposes of discovery. Plaintiff further intended to serve personal jurisdiction discovery on WABCO that would apply in both cases, and work with CFI to arrange the inspection of relevant units as requested by WABCO.

The *Haskell* case has now been filed (*Clayton Haskell v. Paccar, Inc., et al*; 3:21-cv-5067) in this Court. Haskell—like Hogquist—was employed by CFI, Inc. in Joplin, Missouri as an over-the-road truck driver; Haskell was assigned a Kenworth T680 that was sold or leased to CFI in

Joplin, Missouri for use in his work; and Haskell alleges that CMS on the truck he was driving malfunctioned in the same manner alleged by Hogquist, i.e., the system activated when there was no other vehicle nearby and there was no safety-based reason or cause for the deceleration.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 54(b), a district court has "the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (internal quotations and citation omitted). The Court can consider an order "to correct any clearly or manifestly erroneous findings of fact or conclusions of law." *McCormack v. Adel Wiggins Group*, 2017 WL 1426009 at *2 (E.D. Mo. 2017).

Courts should use this power sparingly. Typically, a court should grant the motion to reconsider if the prior decision: "(1) misunderstood a party, (2) made a decision outside of the adversarial issues, or (3) would be rendered incorrect because of a controlling or significant change in law since the issues were submitted to the Court." *Trickey v. Kaman Industrial Technologies Corp.*, 2011 WL 2118578 at *2 (E.D. Mo. 2011). "When evaluating whether to grant a motion to reconsider, the Court also has an interest in judicial economy and ensuring respect for the finality of its decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders." *Id.* Furthermore, even though a court "has the power to revisit prior decisions of its own in any circumstance, it should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Evans v. Contract Callers, Inc.*, 2012 WL 234653 at *2 (E.D. Mo. 2012), quoting *Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800, 817 (1988) (other internal citations and quotations omitted).

## DISCUSSION

1. **Plaintiff's Proposed Second Amended Complaint**

On July 29, 2021, Plaintiff filed his Motion to Reconsider Order Dismissing WABCO USA, LLC (Doc. 90). In that filing, Plaintiff's counsel indicated that he had been attempting to meet with CFI representatives to obtain information regarding the CMS unit in question and that a meeting was scheduled for August 18, 2021. Counsel also indicated that its failure to respond to WABCO's Motion to Dismiss was in error, despite there being no good faith reason for the failure to respond.

The meeting apparently occurred and undersigned counsel seeks to file the Proposed Second Amended Complaint to include additional information learned in the August 18 meeting with CFI. In particular, Plaintiff argues that he discovered that CFI, Inc. has a large number of Paccar/Kenworth vehicles in its Missouri based trucking fleet and these vehicles are purchased at a Joplin, Missouri Kenworth dealer and delivered to CFI at that location; at relevant times these vehicles equipped with CMSs where experiencing malfunctions where the CMS would activate when there were no other vehicles nearby and there was no safety-based reason or cause for the deceleration. WABCO was in regular communication with CFI in Joplin discussing the problem and WABCO sent a team of engineers to CFI's headquarters in Joplin to test the vehicles and investigate the problem.

The new Proposed Second Amended Complaint makes allegations demonstrating that WABCO knew its products were being sold to CFI in Missouri; that WABCO was in regular communication with CFI in Missouri regarding the product defects at issue in this lawsuit; and that WABCO travelled to Missouri to investigate and address the same. Plaintiff also expressly

5

Case 3:21-cv-05013-MDH   Document 103   Filed 09/07/21   Page 5 of 11

alleges that WABCO engaged in tortious conduct while in Missouri inspecting, testing and servicing the CMS units.

The Proposed Second Amended Complaint also makes express that the alleged injuries resulted in medical care in Missouri, benefits paid under the Missouri workers' compensation system and a pending Missouri workers' compensation claim, for which CFI (his Missouri based employer) has a subrogation interest in this action.

It also makes allegations that WABCO solicits and advertises in Missouri and sells and distributes products directly to customers in Missouri, which are allegations that are the subject of the proposed discovery Plaintiff has submitted previously to the Court. Overall, Plaintiff's Proposed Second Amended Complaint provides new information and far more robust pleadings as to this Court's personal jurisdiction over WABCO.

2. **Personal jurisdiction standard**

An out-of-state defendant is subject to personal jurisdiction in Missouri where (1) the suit arose from any activity enumerated in the long-arm statute, Mo. Rev. Stat. §506.500.1 and (2) the defendant has sufficient minimum contacts with Missouri to satisfy due process requirements. *State ex rel. Metal Serv. Center v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984).

Mo. Rev. Stat. §506.500.1 (the "Long Arm Statute") provides for personal jurisdiction over out-of-state defendants "as to any cause of action arising from the doing of any such acts: (1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a tortious act within this state; [ ]." The Long Arm Statute is "intended to provide for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment." *Gaertner*, 677 S.W.2d at 327. The prongs are to be construed broadly for this purpose. A person can be subject to jurisdiction

6

Case 3:21-cv-05013-MDH   Document 103   Filed 09/07/21   Page 6 of 11

under these prongs based on a single transaction and even where the defendant would not be required to qualify to do business in the state. *Id.*

In enacting the Long Arm Statute, the Missouri legislature's "ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State v. Pinnell,* 454 S.W. 2d 889, 892 (Mo.1970). Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction. *See, State v. Wiesman,* 627 S.W. 2d 874, 876 (Mo.1982); *Bell v. Imperial Palace Hotel*, 200 F. Supp. 2d 10821085 (E.D. Mo. 2001) (" [T]he examination of whether Missouri's long-arm statute has been satisfied is coextensive with whether the assertion of person jurisdiction over the defendant meets the requirement of due process, and analysis is collapsed into the single question of whether asserting jurisdiction violates Due Process Clause.").

The lynchpin of the due process analysis is foreseeability. "In determining whether a defendant has established sufficient minimum contacts, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985). This requirement exists to prevent a defendant from being haled into a particular jurisdiction solely as a result of "random, fortuitous, or attenuated contacts, or by the unilateral activity of another party or third person." *Id.*

   a. **Missouri Long-Arm Statute**

The Proposed Second Amended Complaint satisfies the tortious conduct prong of the Missouri Long-Arm Statute by alleging WABCO came into the state to investigate and service the CMS units in CFI's fleet and that WABCO was negligent in its efforts resulting in injury to

Plaintiff. As such, WABCO allegedly committed tortious conduct in the state and is subject to personal jurisdiction on this basis.

WABCO's alleged out-of-state tortious conduct in designing, manufacturing, and inadequately warning with respect to its CMS units also satisfies the Long-Arm Statute. "Missouri courts have interpreted [the 'tortious act' subsection] to include 'extraterritorial acts ... producing actionable consequences in Missouri.'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012) (quoting *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987) (en banc)). Here, the CMS unit was sold in Missouri to a Missouri employer and assigned to Plaintiff as part of his Missouri based employment causing injury that has resulted in a Missouri workers' compensation claim, medical care in Missouri, and a subrogation interest asserted by the Missouri employer CFI in the proceeds of this lawsuit. These Missouri-based consequences further satisfy the tortious conduct prong of the Missouri Long-Arm Statute.

The Proposed Second Amended Complaint also satisfies the transacting business prong of the Long-Arm Statute, including by alleging that WABCO travelled into Missouri to inspect the vehicles, service the CMS units, and investigate the problem. Visiting the end purchaser of the CMS unit to provide product support and service clearly amounts to "transaction of business" in the state. *See Dairy Farms of America, Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472 (8th Cir. 2012) ("Missouri courts construe 'transaction of any business" broadly. A person or firm transacts business by visiting Missouri or sending its product or advertising here.'"); *Boatmen's First Nat'l Bank of Kansas City v. Bogina Petroleum Eng'rs,* 794 S.W.2d 703, 704 (Mo.App.1990) (holding that a single visit by the foreign actor to Missouri was the transaction of business).

The transaction of business prong may be satisfied even without WABCO's communications with CFI in Missouri and its visit to Missouri. Under "stream of commerce"

8

jurisdiction, a defendant can transact business in a state by the sale and/or distribution of its product in the forum. *Hartley v. Kawasaki Motors Corp.*, 2020 WL 9218534, No. 20-00098-CV-SJ-GAF (WD. Mo. Dec. 4, 2020) applies this concept to a component parts manufacturer, holding that the manufacturer transacts business in a state where the component part is incorporated into a final product sold in the state. Plaintiff alleges that this is the case here. WABCO has transacted business in Missouri. WABCO sold its CMS units to Paccar with knowledge that Paccar would sell and distribute the products in Missouri. The fact that distribution is through the seller of an end product (Paccar) does not negate the fact that WABCO intended for its component product to be distributed and sold to customers in Missouri. That is the premise of *Hartley* and the "stream of commerce" jurisprudence—a supplier intends to transact business in a state when it supplies components that it knows are incorporated into final products sold and distributed in that state. *Id.* at *4 ("[I]t seems unlikely in today's national economy that a United States manufacturer of a component found on vehicles throughout the country would not intend for its product to end up in every state or that the manufacturer would not seek placement of its product in a particular state.").

In addition, Plaintiff believes that WABCO directly sells and distributes products to customers in Missouri. Plaintiff makes this allegation in its Proposed Second Amended Complaint (SAC, ¶14-15) and this allegation is the subject the proposed jurisdictional discovery sought by Plaintiff. These allegations are sufficient to satisfy the Long-Arm Statute. *See Hartley, supra* ("[ ] Plaintiffs have alleged that Dill transacted business in the State of Missouri by distributing its tire valves, including the Subject Valve, in Missouri. Consequently, if personal jurisdiction is found proper under the Due Process Clause, it is also proper under the Missouri long-arm statute.").

### b. Due Process analysis

Plaintiff argues that WABCO knew that its CMS units were being sold to Missouri customers and knew specifically about sales to CFI in Joplin. WABCO allegedly further knew about the problems that CFI was having with the CMS units in its Missouri based trucking fleet, and WABCO allegedly knew or should have known that these problem CMS units were being assigned to truck drivers in Missouri. It was then arguably foreseeable to WABCO that should its CMS units cause injury to one of CFI's drivers and that WABCO could be haled into court in Missouri to account for the claim. In fact, WABCO came into Missouri in connection with the CMS problem. While WABCO would not have known the residence of every truck driver to whom the defective CMS units were assigned, or the exact geographic location in which they would be injured, WABCO very clearly knew the drivers' connection to their Missouri based employer CFI. This nexus to Missouri (combined with WABCO's physical presence in the state in connection with the CMS problems) is sufficient basis for exercising personal jurisdiction in Missouri. These connections with Missouri are not "random, fortuitous, or attenuated," nor are they based on the unilateral activity of a third party. The connections are the result of the knowing and intentional conduct of WABCO. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985).

WABCO argues that personal jurisdiction cannot exist because Plaintiff was not injured in Missouri. This argument is misplaced. Location of the accident is only one of the factors considered in the two-part analysis as to (1) whether the state's long-arm statute is satisfied, and (2) whether the exercise of jurisdiction comports with due process. *See Clune v. Alimak,* AB 233 F. 3d 538, 541 (8th Cir. 2000). Indeed, as to the latter issue, the location of the accident is of lesser importance because the due process analysis focuses on whether the Defendant has certain

minimum contacts with the forum state such that maintenance of the suit does not offend traditional motions of fair play and substantial justice. *Id.*

Among the factors considered under the due process analysis, the first and most important is the nature and quality of the Defendant's contacts with the forum state. Accordingly, as the Eighth Circuit has repeatedly stated, "the baseline for minimum contacts is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state.'" *Id.* Foreseeability is the governing principle. *Burger King Corp.*, 471 U.S. at 485. Indeed, in the context of this case, location of Plaintiff's injury is not a significant foreseeability factor. The CMS was manufactured and sold as a component part to an over-the-road tractor trailer designed to be driven all over the country. The location where the injury occurred is therefore far more random, attenuated, and fortuitous than where the Truck and its component parts are sold and assigned to Plaintiff for use.

## CONCLUSION

Based on the foregoing reasons, the Court finds that Plaintiff has demonstrated that a reconsideration of WABCO USA, LLC's dismissal is warranted. Plaintiff is advised to not allow future deadlines to lapse, as the Court may be less forgiving in future situations such as the one at hand. Therefore, Plaintiff's Motion for Reconsideration and Leave to File a Second Amended Complaint (Doc. 89) is **GRANTED**. The Court's previous order (Doc. 86) dismissing WABCO USA, LLC as a defendant in the above-captioned matter is overruled. Plaintiff is ordered to file his Second Amended Complaint on or before September 10, 2021.

**IT IS SO ORDERED.**

Dated: September 7, 2021        */s/ Douglas Harpool*
                  **DOUGLAS HARPOOL**
                  **United States District Judge**